# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

BEVERLY BAILEY,

    Plaintiff,

v.

    Case No. 13-cv-02996 SHL cgc

UNITED OF OMAHA LIFE
INSURANCE COMPANY,

    Defendant.

## ORDER DENYING PLAINTIFF"S
## RULE 37 MOTION TO COMPEL DISCOVERY RESPONSES

Before the Court, by way of Order of Reference (Docket Entry "D.E." #18), is Plaintiff's Rule 37 Motion to Compel Discovery Responses (D.E. #15). After reviewing the motion and Defendant's Response (D.E. #17), Plaintiff's motion is hereby DENIED.

## I. BACKGROUND

The instant Complaint asks the District Court to review the most recent denial of long-term disability benefits after Plaintiff's initial benefits denial by Defendant was remanded for a full and fair review by District Judge William G. Young (11-cv-02344-WGY-dkv, D.E. #30) on March 27, 2013. On December 18, 2013, Plaintiff filed her Complaint for recovery of plan benefits alleging that Defendant "failed to provide benefits due under the terms of the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan" (Compl. ¶ 26), that "the decision to deny benefits was wrong under the terms of the Plan" (Compl. ¶ 27), that "the decision to deny long term disability benefits and decision-

1

making process were arbitrary and capricious" (Compl. ¶ 28), and that "the decision to deny long term disability benefits was not supported by substantial evidence in the record" (Compl. ¶ 29).

On August 15, 2014, Plaintiff filed the instant motion to compel responses to certain interrogatories and requests for production of documents propounded upon Defendant. Plaintiff argues that the interrogatories and requests for production are appropriate because they seek information regarding Defendant's "conflict of interest and potential bias on the part of reviewing doctors." Plaintiff asserts that she has modeled her requests on those approvingly permitted by other courts in the Sixth Circuit.

Defendant's August 29, 2014 response urges the Court to deny Plaintiff's motion because "discovery is inappropriate under the particular facts and circumstances of this ERISA matter, and it unnecessarily increases litigation costs." Defendant further argues that Plaintiff "does not provide specific reasons why discovery is pertinent to United of Omaha's decision after remand," that Plaintiff "seeks irrelevant discovery about demonstrably unbiased independent physician reviews that she did not review or pursue in her initial action," and that "United of Omaha has already provided much of what she requested."

## II. ANALYSIS

The Federal Rules of Civil Procedure generously permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . " Fed. R. Civ. P. 26(b)(1). Generally, the trial court cannot consider evidence outside the administrative record in adjudicating the merits of an ERISA denial of benefits plan. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). The review of solely the administrative record serves ERISA's purpose of providing "a method for workers and beneficiaries to resolve disputes over benefits inexpensively and

2

expeditiously." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990). Consequently, matters outside the record are generally not relevant or discoverable. *See Wilkins*, 150 F.3d at 619; Fed. R. Civ. P. 26(b)(1). "An exception is recognized, however, when evidence outside the record 'is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.'" *Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x (6th Cir. 2009) (quoting *Wilkins*, 150 F.3d at 619). In instances involving such challenges, evidence outside the record may be relevant and discoverable. *See id.*; Fed. R. Civ. P. 26(b)(1).

The United States Supreme Court, in *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), made clear that a plan administrator who is a professional insurance company operates under a conflict of interest when it serves the dual role of an ERISA plan administrator and payor of plan benefits. *Id.* at 114. The *Glenn* Court then proceeded to consider how this conflict "should be taken into account on judicial review of a discretionary benefit determination." *Id.* at 115 (internal quotation marks and citation omitted). The Court concluded that the structural conflict of interest created by the administrator's dual roles is a relevant consideration, among several case-specific considerations, lower courts should consider, with the significance of such a conflict to depend on the circumstances of each case. *Id.* at 115-17. "The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 117. "It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm

fianances, or by imposing management checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits." *Id*.

Following *Glenn*, in *Johnson v. Connecticut General Life Insurance Company*, 324 F. App'x. 459 (6th Cir. 2009), the United States Court of Appeals for the Sixth Circuit considered the propriety of a district court's decision to allow limited discovery concerning the conflict of interest created when an employer utilizes dual-role administrators under an ERISA plan. *Id.* at 465-67. The *Johnson* court first cited with approval the Sixth Circuit precedent holding that "a mere allegation of bias is not sufficient to permit discovery under *Wilkins*' exception." *Id*. at 466. Citing *Glenn*, the *Johnson* court nevertheless rejected the defendant's contention that Sixth Circuit precedent should be interpreted to impose a threshold evidentiary showing of bias as a prerequisite to discovery under *Wilkins*. *Id*. at 466. The *Johnson* court also rejected the notion that *Glenn* permits discovery automatically in instances where the defendant is both the administrator and the payor. *Id*. at 467. Instead, the court indicated that "[d]istrict courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins*." *Id*. at 467; *accord Bell v. Ameritech Sickness & Acc. Dis. Ben. Plan*, 399 F. App'x 991, 998 (6th Cir. 2010) ("Discovery may be appropriate to determine the weight to accord a conflict of interest, . . . but the district court retains discretion to decide when to allow such discovery.").

After *Johnson*, courts have taken several approaches concerning requests for discovery outside the administrative record. Some have found that discovery regarding claims of bias is appropriate when the only showing of bias is the allegation of an inherent conflict of interest. *Pemberton v. Reliance Standard Life Ins. CO.*, No. 08-86-JBC, 2009 WL 89696, at *2 (E.D.Ky. Jan. 13, 2009); *Cramer v. Appalachian Reg'l Healthcare, Inc*., No. 5:11-49-KKC, 2012 WL 996583, at *2 (E.D.Ky. Mar. 23,

4

2012); *Busch v. Hartford Life & Accident Ins. Co.*, No. 5:01-111-KKC, 2010 WL 3842367, at *3 (E.D.Ky. Sept. 27, 2010). These courts reason that the act of denying discovery until there has been an initial showing of bias "essentially handcuffs the plaintiff, who . . . will rarely have access to any evidence beyond a bare allegation of bias, in the absence of discovery." *Kinsler v. Lincoln Nat. Life Ins.Co.* , 660 F. Supp. 2d 830, 836 (M.D.Tenn. 2009). These courts find that the Supreme Court's instruction that it does not "believe it is necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict" renders the inherent conflict of interest sufficient to allow limited discovery. *Busch*, 2010 WL 3842367, at *2 (quoting *Glenn*, 544 U.S. at 106).

Conversely, other courts have required more than a mere showing of an inherent administrator/payor conflict. *Donavan v. Hartford Life & Acc. Ins. Co.*, No. 1:10-2627-PAG, 2011 WL 1344252, at *2 (N.D.Ohio Apr. 8, 2011); *see also Geer v. Hartfore Life & Acc. Ins. Co.*, NO. 08-12837-DAS, 2009 WL 1620402, at *5 (E.D.Mich. June 9, 2009) ("discovery should be allowed where a plaintiff has provided sufficient initial facts suggesting a likelihood that probative evidence of bias or procedural deprivation would be developed."). These courts have found that an allegation of bias alone is insufficient to permit discovery. Instead, a plaintiff must make a sufficient factual showing to expand discovery beyond the administrative record. Similarly, one court has created a two-step process under which a plaintiff may obtain discovery on the sole issue of whether the defendant or the individuals participating in the review of the plaintiff's claim have any financial interest in the outcome of the claim. *Clark v. Am. Elec. Power Sys. Long Term Disability Plan*, 871 F. Supp. 2d 655, 662 (W.D.Ky. 2012). Despite the differing approaches, this Court has sided with the Courts that allow limited discovery if the plaintiff alleges that the insurer occupies this dual role under the reasoning that an inherent conflict of

5

interest exists and that *Glenn* "resolved the 'threshold or no threshold' debate in favor of the ERISA plaintiff." *Linda Byrd v. GTX, Inc.*, No. 2:08-cv-02852-JPM-cgc, 2009 WL 3839478 (W.D.Tenn. Nov. 13, 2009).

In the instant case, while it is undisputed that United of Omaha is a professional insurance company that acts both as an ERISA plan administrator and payor of plan benefits, Plaintiff's Complaint contains no allegation that United of Omaha acted improperly based upon this conflict of interest. Thus, the United States Court of Appeals for the Sixth Circuit has explicitly held in *Johnson* that Plaintiff is not automatically entitled to even limited discovery based solely upon the inherent conflict of interest of an insurer occupying this dual role. 324 F. App'x. at 467.

Even assuming, *arguendo*, that raising the issue of a conflict of interest for the first time in discovery requests on an ERISA claim is sufficient to be deemed an "allegation," which the Court finds it is not, Plaintiff would at most be permitted very limited discovery. Plaintiff has propounded four interrogatories and four requests for production to which she argues in the instant motion Defendant has not adequately responded. These eight discovery requests all pertain to the two doctors who reviewed Plaintiff's claim on United of Omaha's behalf—Dr. Vicki Kalen and Dr. Joe Ordia. A summary of the discovery requests at issue and the substantive disclosure(s)[1], if any, provided by United of Omaha is as follows:

> **Interrogatory #4:** Plaintiff requests the number of times that Dr. Kalen or Dr. Ordia reviewed a claim on behalf of United of Omaha in 2012, 2013, and 2014, whether contracted directly by United of Omaha, or by a third party with whom United of Omaha contracted to obtain such a review.

---

[1] For purposes of this analysis only, the Court omits United of Omaha's objections to the discovery requests as set forth in each response and focuses only on the substantive discovery provided.

**Defendant's Response to Interrogatory #4:** United of Omaha states Dr. Kalen reviewed Plaintiff's claim for United of Omaha. On remand, Dr. Ordia reviewed Plaintiff's claim for United of Omaha. Neither Dr. Kalen nor Dr. Ordia are employees of United of Omaha. Upon information and belief, Dr. Kalen is a contract reviewer for Reliable Review, Services and Dr. Ordia is a contract reviewer for University Disability Consortium. Reliable Review Services and University Disability Consortium are vendors of United of Omaha but are not related to United of Omaha.

**Interrogatory #5:** Plaintiff requests the financial payments made to these doctors by United of Omaha directly (to the doctor) or indirectly (to the doctor's non-Omaha employer, if applicable) in 2012, 2013, and 2014.

**Defendant's Response to Interrogatory #5:** No substantive disclosure by Defendant in response to Interrogatory #5.

**Interrogatory #6:** Plaintiff requests the method by which financial payments were calculated (e.g. payment by the hour spent reviewing, payment per page of records reviewed, payment per file reviewed, etc.) for payments made by United of Omaha directly or indirectly to Dr. Kalen and Dr. Ordia in 2012, 2013, and 2014.

**Defendant's Response to Interrogatory #6:** United of Omaha pays University Disability Consortium at an hourly rate. No substantive disclosure by Defendant as to Reliable Review Services.

**Interrogatory #7:** Plaintiff asks, for files United of Omaha referred to Dr. Kalen and Dr. Ordia for review in 2012, 2013, and 2014, state the number of files reviewed in which the doctors found claimants able to work in at least a light occupation or were otherwise not disabled under the policy's definition of disability.

**Defendant's Response to Interrogatory #7:** United of Omaha does not track this information.

**Request for Production #2:** Plaintiff requests copies of any and/or all contracts or agreements between Dr. Kalen and Dr. Ordia, their employers, and United of Omaha.

**Defendant's Response to Request for Production #2:** No substantive disclosure by Defendant in response to Request for Production #2.

**Request for Production #3:** Plaintiff requests copies of any and/or all correspondence between the Dr. Kalen and Dr. Ordia or their employers and United of Omaha concerning Plaintiff's disability claim.

**Defendant's Response to Request for Production #3:** No substantive disclosure by Defendant in response to Request for Production #3.

**Request for Production #4:** Plaintiff requests that United of Omaha produce records of any invoices or bills sent by Dr. Kalen and Dr. Ordia or those doctors' non-Omaha employees to United of Omaha for reviews performed in the years 2012, 2013, and 2014.

**Defendant's Response to Request for Production #4:** No substantive disclosure by Defendant in response to Request for Production #4.

**Request for Production #5:** Plaintiff requests that United of Omaha produce any payments made by Omaha to Dr. Kalen and Dr. Ordia for reviews performed in the years 2012, 2013, and 2014.

**Defendant's Response to Request for Production #5:** No substantive disclosure by Defendant in response to Request for Production #5.

In addition to its discovery responses, United of Omaha has provided the Affidavit of Kevin Balvin, Director of Long Term Disability Claims, which explains that the company "takes active steps to ensure that external medical reviews are not biased by employing procedures to eliminate any possible influence it could have over reviewers." (Def.'s Resp., Exh. A ("Baldwin Aff.") ¶ 3). Specifically, United of Omaha does not refer claims for evaluation to specific external reviewers, requests external reviews from its vendors that are responsible for assigning the reviewers, and does not control the roster of reviewers that may be assigned to a claim by the vendor. (*Id.* ¶¶ 4-6). External reviewers do not determine whether claims are paid or denied. (*Id.* ¶ 7). The claims analyst on a given case may either accept or reject the reviewer's opinion in reaching his or her decision. (*Id.* ¶ 8). After a determination is made, United of Omaha does not inform the reviewer about whether the claim is paid or denied. (*Id.* ¶ 9). United of Omaha does not pay reviewers more for reaching a particular conclusion. (*Id.* ¶ 10). Courts have considered affidavits of this nature to determine whether discovery is appropriate and, if so, the permissible scope. *See, e.g.*, *J. Kay Raver v. Lincoln Life & Annuity Company of New York*, 2:12-cv-00830, 2013 WL 1149180, at *2 (S.D.Ohio Mar. 19, 2013). Based upon United of Omaha's discovery responses and the Baldwin Affidavit, it is clear to the Court that it has "taken active steps to reduce

potential bias and to promote accuracy." *Glenn,* 554 U.S. at 117; *see also Raver*, 2013 WL 1149180, at *2 . Thus, as already stated, even if Plaintiff had properly alleged a conflict of interest in her Complaint, which she has not, based upon the responses provided by Defendant and the Baldwin Affidavit, the Supreme Court has significantly limited the bounds of any permissible discovery when the insurer has demonstrated steps to reduce conflict of interest—"perhaps to the vanishing point." *Id.*

Finally, Plaintiff argues that the Court should compel Defendant to fully respond to these discovery requests because she has closely modeled her requests upon those permitted by other district courts within the Sixth Circuit. However, the Court finds that the cases cited by Plaintiff are inapposite. For example, in *Kasko v. Aetna Life Ins. Co.*, No. 5:13-243-DCR, 2014 WL 3586085 (E.D.Ky. July 21, 2014), the court permitted interrogatories concerning the following: payments to doctors who reviewed a claim; the number of times over a three-year period that each doctor reviewed a claim on behalf of the insurer; whether the reviewing doctors were contracted directly by the insurance company or by a third party; and, the number of times over a three-year period that each reviewing physician recommended a finding of sedentary work or otherwise not disabled. *Id.* at *4-*5. The *Kasko* court permitted requests for production of documents concerning the following: all contracts or agreements between the insurance company and the doctors that reviewed the plaintiff's claim; all records of invoices or bills sent by the doctors that reviewed the plaintiff's claim during a three-year period; and, all records of payments during a three-year period made by the insurance company to the doctors that reviewed the plaintiff's claim. *Id.* at *5-*6.

While these interrogatories and requests for production approved in *Kasko* do closely mirror Plaintiff's proposed discovery requests, the *Kasko* court made clear that it permitted such broad discovery because the plaintiff had first offered very strong proof and "made a sufficient showing of potential bias."

9

*Id.* at *3. Specifically, the *Kasko* plaintiff had demonstrated that approximately eighty-five percent to ninety percent of the claims considered by the doctor that had reviewed plaintiff's claim resulted in a recommendation that the claimant was not disabled. *Id.* The reviewing doctor in *Kasko* had also been "criticized by other courts for the content and frequency of reviews she makes" on behalf of the defendant-insurer. *Id.* (citing cases). Accordingly, because the *Kasko* plaintiff had demonstrated "circumstances [that] suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration," *see, Glenn* 554 U.S. at 117, she was entitled to much broader discovery.

Also cited by Plaintiff for the proposition that her discovery requests mirror those permitted by other courts is *Pemberton v. Reliance Standard Life Insurance Company*, No. 08-86-JBC, 2009 WL 89696 (E.D.Ky. Jan. 13, 2009). Yet, even the *Pemberton* court heavily focuses on the threshold question of eligibility for discovery and notes that it is clear that even a "mere allegation of bias is insufficient to throw open the doors of discovery in an ERISA case." *Id.* at *1 (internal citations omitted) (citing *Likas v. Life Ins. Co. of North America*, 222 F. App'x 481, 486 (6th Cir. 2007); *see also Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 431 (6th Cir. 2006) ("[U]ntil a due process violation is at least colorably established, additional discovery beyond the administrative record into a plaintiff's denial of benefits claim is impermissible.")). The *Pemberton* plaintiff "provided more than a 'mere allegation of bias' by showing that a conflict of interest is present." 2009 WL 89696 at *2. As to the scope of any permitted discovery, the *Pemberton* court declined to "rule on the appropriateness of each individual interrogatory or request for production of documents" but noted it its guidance "on why type of information is discoverable" that an alleged conflict of interest would be "more significant under circumstances that suggest that it affected the benefits decision, such as when the administrator has a history of making

10

biased decisions." *Id*. at *3. The *Pemberton* court, like the *Kasko* court, also noted that discovery was less appropriate if the insurer had taken active steps to reduce potential bias and to promote accuracy. *Id*. at *3; *see Glenn* 554 U.S. at 117.

Ultimately, in the instant ERISA action, the Complaint contains no allegation that United of Omaha denied Plaintiff's claim due to a conflict of interest. Thus, *Johnson* prohibits automatic discovery into this issue. Even if the Court were to consider whether Plaintiff is nonetheless entitled to limited discovery absent any allegation that a conflict of interest resulted in her claim denial, United of Omaha's responses to Plaintiff's discovery requests and its voluntary provision of the Baldwin Affidavit demonstrate that it has taken significant steps to reduce a conflict of interest, which weighs heavily against compelling United of Omaha to provide further discovery. Finally, although Plaintiff's discovery requests do indeed track those permitted by other courts, those courts were presented with either allegations or even strong proof of conflict of interest. Such is not present in the instant case. Accordingly, Plaintiff's Rule 37 Motion to Compel Discovery Responses is hereby DENIED.

**IT IS SO ORDERED** this 10th day of November, 2014.

s/ Charmiane G. Claxton<br>CHARMIANE G. CLAXTON<br>UNITED STATES MAGISTRATE JUDGE